# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DONALD LEE WEIDENBURNER,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Civil Case No. 3:15-cv-00762-JPG<br>---<br>Criminal Case No. 4:02-cr-40053-JPG-1 |

## MEMORANDUM & ORDER

**J. PHIL GILBERT, DISTRICT JUDGE**

This matter comes before the Court on petitioner Donald Lee Weidenburner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Doc. 1.) The Government responded to the motion and the petitioner filed a reply to the Government's response. (Docs. 40, 41.) For the following reasons, the Court **DENIES** Weidenburner's motion.

## I.    BACKGROUND

Donald Lee Weidenburner is an inmate at Talladega Federal Correctional Institution. He is an inmate there because in 2012—a decade after Weidenburner fled the jurisdiction following the original indictment in this case—a jury convicted him of conspiracy to manufacture and distribute 500 grams or more of methamphetamine, all in violation of 21 U.S.C §§ 841(a)(1), 841(b)(1)(A)(viii), and 846. (No. 02-cr-40053, Doc. 666.) The Court then sentenced Weidenburner to 360 months imprisonment followed by ten years of supervised release. (No. 02-cr-40053, Doc. 705.)  Since then, Weidenburner has appealed his conviction to the Seventh Circuit (No. 02-cr-40053, Doc. 710); appealed the Seventh Circuit's dismissal of his appeal to the United States Supreme Court (Appellate No. 12-2579, Docs. 57, 58); appealed four more orders of this Court to the Seventh Circuit (No. 02-cr-40053, Docs. 765. 774, 846, 860); filed

1

two motions to reduce his sentence (No. 02-cr-40053, Docs. 818, 882); filed a motion to reconsider one of this Court's orders denying his motion to reduce his sentence (No. 02-cr-40053, Doc. 887); and filed three motions for a new trial (No. 02-cr-40053, Docs. 674, 757, 833). After Weidenburner filed his third motion for a new trial, this Court warned him that the relief he sought was only available in a § 2255 petition and gave him the option of either withdrawing the motion or, if he so refused, the Court would construe it as a § 2255 petition. (No. 02-cr-40053, Doc. 844.) Weidenburner did not withdraw his motion, so now we are here.

In his § 2255 petition, Weidenburner forcefully argues that the Government failed to disclose two reports to him in his criminal case, in violation of *Brady v. Maryland*, 373 U.S. 83, 84 (1963) and various other theories. Both reports involve early investigations into Weidenburner's criminal case around late 2000 and early 2001. The first is a report by Indiana Detective Chris King (the "King Report"), which Weidenburner claims he unearthed in a 2014 FOIA request to the State of Indiana after his federal conviction and appeal. (Doc. 1-2, p. 14.) The King Report states that another detective—Kurt Althoff—"went back to the Sheriff's Dept. to talk to Weidenburner about the incident in Eldorado [where Weidenburner was cooking methamphetamine]." (*Id.*) The King Report then says that "Althoff said that [Weidenburner] gave [Althoff] some information that he could use to obtain a warrant in Illinois." (*Id.*)

The King Report is important because it leads Weidenburner to point fingers at the Government for hiding a second report: one by Detective Althoff that enshrines Weidenburner's oral statements—the "information" referenced in the King Report—that led to the procurement of the Illinois warrant. Weidenburner continues to deny that he gave Althoff any such oral statements, and he believes that if he had access to this second report, he could challenge the validity of the Illinois warrant. The Government, however, has asserted repeatedly that this

second report does not exist and that Weidenburner had copies of all the necessary reports and statements during his criminal proceedings.

## II.　LEGAL STANDARDS

The Court must grant a § 2255 motion when a defendant's "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. However, "[r]elief under § 2255 is only available 'in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice.'" *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) (quoting *Blake v. United States,* 723 F.3d 870, 878-79 (7th Cir. 2013)). It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009).

A § 2255 motion does not substitute for a direct appeal. A defendant cannot raise constitutional issues in a § 2255 motion that he could have, but did not raise in a direct appeal unless (1) he shows good cause for and actual prejudice from his failure to raise them on appeal, or (2) failure to consider the claim would result in a fundamental miscarriage of justice, such as when a defendant is actually innocent of the crime. *Bousley v. United States*, 523 U.S. 614, 622 (1998); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Fountain v. United States*, 211 F.3d 429, 433 (7th Cir. 2000); *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). A defendant cannot raise nonconstitutional issues in a § 2255 motion that he failed to raise on direct appeal regardless of cause and prejudice. *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009); *Lanier v. United States*, 220 F.3d 833, 842 (7th Cir. 2000).

Neither is a § 2255 motion necessarily a second chance at an appeal. *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007). Applying the "law of the case" doctrine, the Court may refuse to consider issues in a § 2255 motion that a defendant raised on direct appeal where there are no changed circumstances of fact or law. *Id.*; *Fuller v. United States*, 398 F.3d 644, 648 (7th Cir. 2005); *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995); *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992).

## III. ANALYSIS

Weidenburner's argument drowns in a sea of reasons: procedural default; no showing of cause or prejudice; a failure to explain why these reports should constitute *Brady* material; zero evidence that the Government hid any reports; and more. But perhaps the biggest reason for failure is that it appears Weidenburner has been dishonest in his representations: it is eminently clear from the files and records of the case that Weidenburner had access to the King Report before his criminal trial, tainting his entire argument.

### i. The King Report

Weidenburner contends that he first discovered the King Report in his 2014 FOIA request to the Spencer County Prosecutor's Office. He claims it "was only by 'The Grace of God'" that he found this document. (Doc. 1, p. 12.) But it was not The Grace of God that delivered the King Report. It was the United States Attorney's Office, when they sent it on a discovery disc in September 2011. (Gov.'s Resp. Ex. E, Doc. 40-5.) That disc contained 2293 pages, with the King Report available at pages 1979–85. In December 2011, the Government sent Weidenburner's attorney yet another copy of the discovery disc out of caution. (Gov.'s Resp. Ex. F, Doc. 40-6.) And two days later, the Government sent a third copy of the disc to Weidenburner's counsel—but this time, the top of each page was "bate-stamped" with the name

of the criminal case, the case number, the date that the Government sent the disc (12/30/11), and a page number. (Gov.'s Resp. Ex. G, Doc. 40-7; Gov.'s Resp. at 16, Doc. 40.) The King Report is available at page 1979 of the bate-stamped disc. (*Id.*)

It is crystal clear from the record that Weidenburner received a copy of the discovery disc. In his second motion for a new trial—which he filed in 2013, a year before his FOIA request—he attached 214 pages from the bate-stamped disc. (Gov.'s Resp. Ex. H, Doc. 40-8.) Those pages all contain the bate-stamp at the top-right corner, including the "12/30/11" date that the Government sent the disc. (*Id.*) This fact alone completely eviscerates Weidenburner's argument that he did not have access to the King Report until his 2014 FOIA request.

Moreover, during a suppression hearing several months before trial, Agent Greg Hanisch expressly referred to the King Report during cross-examination by Weidenburner's attorney, Robert Herman:

> Q. (BY MR. HERMAN) Are you aware of whether or not there were reports, or have you ever reviewed any reports written by the, any Indiana authorities in interviewing Mr. Weidenburner?
>
> A. I don't know of any reports of interviews done by them.
>
> Q. Okay. But you do know that they interviewed him?
>
> **A. Only by the brief statement in the Spencer County, Indiana, Sheriff's Department's report from the search warrant that says that Mr. Weidenburner was interviewed. That's all I know.**
>
> Q. Okay. Was he interviewed while he was in custody?
>
> A. I have no idea.
>
> Q. Okay. Do you know, did Mr. Weidenburner to your knowledge either to you or anyone else request that an attorney be appointed to represent him?
>
> A. Not to my knowledge.

(Mot. to Suppress Tr. 18:23–19:14, Doc. 38-1) (emphasis added). At the same suppression hearing, Mr. Herman moved for a continuance of the jury trial so that he would have time to review all of the discovery—which he estimated as "approaching 3,000 pages now." (*Id.* at 75:17.) In light of the record, Weidenburner's claim that he did not have a copy of the King Report is simply unbelievable.

Even if the Court assumes, *arguendo*, that the Government did not send the King Report to Weidenburner and he first discovered it in his 2014 FOIA request, his argument fails nonetheless because he has not explained how this report would qualify as *Brady* material. *Brady* held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process **where the evidence is material either to guilt or to punishment**, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87 (emphasis added). Accordingly, "*Brady* material must be exculpatory." *United States v. Brown*, 822 F.3d 966, 975 (7th Cir. 2016). But as the Government correctly stated in its response: "while petitioner claims that the King Report constitutes *Brady* material, the Government does not see how its contents contain *any* evidence/information that could be deemed favorable to petitioner." (Gov.'s Resp. 22, Doc. 40.)

Weidenburner also believes that this "new evidence"—the King Report—means that "the statement by the Seventh Circuit Court of Appeals [rejecting Weidenburner's Sixth Amendment argument] could not possibly be true". But Weidenburner has not presented any viable argument on this matter, and pursuant to the "law of the case" doctrine, the Court refuses to consider his argument considering it was raised on direct appeal and there are no changed circumstances of fact or law. *See Varela*, 481 F.3d at 935. A § 2255 motion is not a second chance at an appeal.

    ii.    *The Althoff Report*

Weidenburner also believes that the Government is hiding a second report from him—one that records the "information" mentioned in the King Report that Weidenburner supposedly gave to Detective Althoff, leading to the search warrant. Weidenburner makes several arguments regarding this alleged report, but they all fail. In fact, his arguments on this matter tend to be frivolous for a very simple reason: the Althoff report does not exist. *Cf. United States v. Weidenburner*, 550 F. App'x 298, 302 (7th Cir. 2013) (referring to a number of Weidenburner's arguments as "frivolous").

To start, Weidenburner is convinced that even if the Government did disclose the King Report to him before trial, the King Report nevertheless put the Government on notice that a report by Althoff must exist. Therefore, he believes that this alleged Althoff report qualifies as protected *Brady* material "because [it contains] statements that Donald Lee Weidenburner did not make." (Doc. 1, p. 8.) Since *Brady* held that the state's failure to disclose exculpatory material violated constitutional guarantees of due process, Weidenburner's argument amounts to a constitutional issue. *See Brady*, 373 U.S. at 87 But Weidenburner cannot raise constitutional issues in a § 2255 motion that he could have, but did not raise in a direct appeal unless he shows (1) cause for failing to bring the argument on appeal, and (2) actual prejudice to his case by not doing so. *Bousley v. United States*, 523 U.S. 614, 622 (1998).

Weidenburner's explanation on the cause requirement—why he failed to bring this argument in his Seventh Circuit appeal—seems to be based on his allegation that he first discovered the King Report in his 2014 FOIA request. Since the FOIA request occurred after his appeal, Weidenburner's argument appears to be that he could not have known about this hidden Althoff report during the appeal process. But as the Court has already explained, the record in Weidenburner's criminal case demonstrates that Weidenburner had access to the King Report

before his trial. Accordingly, Weidenburner has not shown good cause for failing to raise this argument on appeal.

And even if Weidenburner could meet the cause requirement, he cannot meet the second requirement—prejudice—for one straightforward reason: **there is no Althoff report**. You cannot be prejudiced by not receiving something that does not exist. In the aforementioned suppression hearing several months before trial, the Government explained:

> **THE COURT:** What statements are you referring to? Are you referring to, to what you filed the motion to suppress on?
>
> **MR. HERMAN:** And anything else that they haven't disclosed to me yet at this point, because I know about the four statements that are inculpatory, and according to the discovery I have that's what the Government's provided me as to the statements that are made.
>
> **THE COURT:** I assume if the Government had any other statements they would have provided them to you.
>
> **MR. HERMAN:** I assume. But as of today, I'm still getting new discovery material.
>
> **MS. ROBERTSON [for the United States]:** Your Honor?
>
> **THE COURT:** Are there any other statements other than what you've –
>
> **MS. ROBERTSON: They have, and they have always had, all reports of all statements.** Again, he's saying I don't know that one exists, I'm going to fish and find out if one exists. **And I'm telling the Court and I'm telling Mr. Herman, he has all the statements.** This is, this is looking for other statements and things that he's not filed a motion to suppress.

(Mot. to Suppress Tr. 17:19-18:15, Doc. 38-1) (emphasis added). The Government has continued to assert that they gave Weidenburner copies of all statements and that no Althoff report exists. Gov.'s Resp. at 22–24, Doc. 40.)

Weidenburner made this same argument about a secret Althoff report in front of the Court of Appeals of Indiana, while he was appealing his state criminal conviction. The court there aptly explained: "Weidenburner was not denied an opportunity to inspect the records that the prosecutor's office possessed. The State informed the trial court that it had provided Weidenburner with all the information it had in its possession regarding his case. The State noted, **'[i]t is not that the State *won't* tell [Weidenburner] the status of the alleged report; the State *can't* tell him because no such report is in the possession of custody of the Prosecuting Attorney.'"** *Weidenburner v. State*, 42 N.E.3d 176 (Ind. Ct. App. 2015), *cert. denied*, 137 S.Ct. 578 (2016) (emphasis added).

Revealingly, this is not the first time that Weidenburner has argued about nonexistent documents in this case. Following his trial, he argued that the Government erred by not producing proffer letters regarding two witnesses that may have testified in front of the grand jury nearly a decade earlier, when the grand jury first returned the indictment in this case. The Court replied to Weidenburner's argument as follows:

> **THE COURT:** The motion for a new trial is denied. The matter regarding the proffer letters comes down to this, no court anywhere -- Mr. Weidenburner, you need to be listening now rather than trying to talk. It comes down to this: **No court anywhere can order someone to produce what doesn't exist or what can't be found.** Now, the real problem here is that Mr. Weidenburner, he violated the terms of his bond, and he ran, and that something ten years later can't be found wouldn't be so surprising to anyone. Just common sense tells you that with the passage of time things tend to be misplaced, mislaid, lost, any number of things, **but I'm satisfied that the Government's explanation for the absence of these proffer letters is sufficient. I believe them, but it wouldn't have made a bit of difference. The evidence in this case of guilt was so overwhelming that it was literally crushing.**

(Case No. 02-cr-40053, Tr. 8:6-17, Doc. 728) (emphasis added).

That statement by the Court six years ago applies again today. The Court cannot command the Government to conjure up a document that does not exist. And even if the document did exist, even if Weidenburner could get past his procedural default, and even if he could properly frame his argument as a constitutional *Brady* issue, he cannot make any showing of prejudice because "the evidence in this case of guilt was so overwhelming that it was literally crushing." (*Id*. at 8:15-17.) Because Weidenburner's claim is unequivocally barred by procedural default, the Court declines to reach the issue of whether a supposed Althoff report would qualify as *Brady* material.

Next, in his reply brief, Weidenburner argues that the Government should have disclosed the supposed Althoff report pursuant to Federal Rule of Criminal Procedure 16(a)(1)(B). That rule states:

> (B) Defendant's Written or Recorded Statement. Upon a defendant's request, the government must disclose to the defendant, and make available for inspection, copying, or photographing, all of the following:
>
> > (i) any relevant written or recorded statement by the defendant if:
> >
> > > • statement is within the government's possession, custody, or control; and
> > > • the attorney for the government knows—or through due diligence could know—that the statement exists;
> >
> > (ii) the portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent;

FED. R. CRIM. P. 16(a)(1)(B). Weidenburner has also cited sparsely to Rules 16(a)(1)(E) (Documents and Objects) and Rule 16(c) (Continuing Duty to Disclose). Together, those rules

place the Government on a continuing duty to disclose additional documents within the Government's possession, custody, or control. *See generally* FED. R. CRIM. P. 16(a)(1)(B) and 16(c).

Weidenburner's argument fails. As an initial matter, his Rule 16 argument first burst onto the scene in his reply brief. Reply briefs are for replying, not making new arguments. *Citizens Against Ruining The Env't v. E.P.A.*, 535 F.3d 670, 675 (7th Cir. 2008) ("[i]t is improper for a party to raise new arguments in a reply because it does not give an adversary adequate opportunity to respond."). Accordingly, it is within the Court's purview to disregard this Rule 16 argument entirely if it so chooses.

Regardless, a defendant cannot raise a nonconstitutional issue in a § 2255 motion that he failed to raise on direct appeal. *Sandoval*, 574 F.3d at 850. Federal Rule of Criminal Procedure 16(a) is not a constitutional issue. So even if the Court considers Weidenburner's Rule 16(a) argument in his reply brief, his procedural default obliterates his claim. And even though there may be occasions when a violation of a Federal Rule of Criminal Procedure could rise to a violation of constitutional due process, Weidenburner has not argued how that is the case here. The Court is under no duty to design an argument for Weidenburner, and it will not do so.

To end, Weidenburner makes a number of other arguments in his motion that are without merit. These claims include supposed violations of *Giglio v. United States*, 405 U.S. 150 (1972) (Doc. 1, p. 9); the Jencks Act (Doc. 1, p. 11); and a longwinded theory about how the King Report demonstrates that a law enforcement officer perjured himself at the aforementioned suppression hearing (Doc. 1, p. 10). Not only are these arguments also barred by the aforementioned procedural default and meritless in light of the record, the Seventh Circuit has already explained to Weidenburner that *Giglio* and the Jencks Act should not apply to claims like

this. *See Weidenburner*, 550 F. App'x at 304–05 (spelling out that "*Giglio* requires disclosure of inducements for a witnesses's testimony" and the Jencks Act applies to "factual narrative[s] useful for impeachment"). Here, the King Report and the nonexistent report by Althoff do not qualify as *Giglio* material because they are not inducements for a witness's testimony. And there has been no violation of the Jencks Act here because even if Weidenburner could somehow show that his perjury theory is correct, he already had a copy of the King Report before the suppression hearing.

Accordingly, in light of the motions, files, and records in this case, the Court finds that an evidentiary hearing is unnecessary and **DENIES** Weidenburner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Doc. 1.)

### IV.   CERTIFICATE OF APPEALABILITY

Having denied the petitioner's motion, the Court must grant or deny a certificate of appealability. *See* Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts; 28 U.S.C. § 2253(c). Section 2253(c)(2) provides that a certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. The petitioner has made no such showing. Therefore, the Court declines to issue a certificate of appealability. Pursuant to Rule 11(a), the petitioner may not appeal the denial of a certificate of appealability, but he may seek a certificate from the Court of Appeals for the Seventh Circuit.

**IT IS SO ORDERED.**

**DATED:  FEBRUARY 5, 2018**

s/ *J. Phil Gilbert*
**J. PHIL GILBERT**
**DISTRICT JUDGE**
